IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-00394-BO

| | |
|---|---|
| STEWART ABRAMSON, PAUL JONES<br>AND MARK FITZHENRY,<br>ON BEHALF OF THEMSELVES AND<br>ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFFS,<br><br>v.<br><br>SAFE STREETS USA LLC, and TEKTIKS<br>INNOVATIVE NETWORK USA INC,<br><br><br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **FOURTH AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Stewart Abramson, Mark Fitzhenry and Paul Jones bring this class action under the Telephone Consumer Protection Act and the South Carolina Telephone Privacy Protection Act against Safe Streets USA LLC ("Safe Streets") and Tektiks Innovative Network USA Inc. ("Tektiks"), (collectively referred to as "Defendants"), to stop Defendants from making unauthorized pre-recorded voice message, autodialed calls, and other unsolicited calls and to obtain redress for all persons similarly injured by its conduct. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### **NATURE OF THE ACTION**

1.       This case is brought to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.

*See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Plaintiff Fitzhenry also brings this action pursuant to the South Carolina Telephone Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10 *et. seq*.

3. The lawsuit challenges Defendants' practice of making unauthorized pre-recorded voice message calls to consumers promoting ADT's home alarm services.

4. One of Mr. Fitzhenry's calls was made pursuant to an arrangement between Safe Streets, an Authorized Dealer for ADT, and Tektiks, a company Safe Streets hired to originate new customers for them.

5. Despite the filing of this lawsuit by Mr. Fitzhenry, Mr. Fitzhenry received an additional autodialed call on his cellular telephone promoting ADT from Safe Streets.

6. Mr. Jones also received a pre-recorded voice call from Safe Streets, or a vendor making calls on its behalf, promoting ADT goods and services.

7. This call was made pursuant to an arrangement between Safe Streets, an Authorized Dealer for ADT, and Acquity LLC, a company Safe Streets hired to originate new customers for them.

8. Plaintiff Stewart Abramson brings this action under the TCPA alleging that Simple Home 360 Inc., as part of an agreement with Safe Streets USA LLC, sent him a pre-recorded telemarketing call for purposes of promoting ADT's home security services without his prior express written consent.

9. The Plaintiffs and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Safe Streets.

Plaintiffs also seek an injunction requiring Defendants to cease making unsolicited pre-recorded voice message calls to consumers.

10. A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

11. Plaintiff Fitzhenry is, and at all times relevant to the allegations in the complaint was, a South Carolina resident.

12. Plaintiff Jones is, and at all times relevant to the allegations in the complaint was, a Florida resident.

13. Plaintiff Abramson is, and at all times relevant to the allegations in the complaint was, a Pennsylvania resident.

14. Defendant Safe Streets USA LLC is a Delaware limited liability company with its principal place of business in Gaynor, NC.

15. Defendant Tektiks Innovative Network USA Inc. is a New York corporation. Tektiks transacts business in this District, including signing its agreement with Safe Streets and making calls into this District.

## JURISDICTION & VENUE

16. This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the TCPA.

17. The Court has personal jurisdiction over Safe Streets because of their registration with the State of North Carolina. In addition, Safe Streets maintains its principal place of business in North Carolina.

18. The Court has personal jurisdiction over Tektiks because they engaged in nationwide telemarketing conduct, including into this District. Furthermore, they entered into a contractual relationship with ADT in this District

19. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were commissioned into this District and because the Defendants reside in this District.

## TCPA BACKGROUND

20. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones

21. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

22. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

4

23. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

24. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The SCTPPA

25. On May 18, 2018 the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10 *et. seq*.

26. The SCTPPA prohibits, *inter alia,* a party from initiating any telephone solicitations using a manipulated or inacurate Caller ID number. S.C. Code § 37-21-50.

27. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA. S.C. Code § 37-21-80.

5

The Growing Problem of Automated Telemarketing

28.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

29.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), **https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf**.

30.     *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), **https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203**.

31.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

6

32.     According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 3, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

**33.**     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 3, 2019).

## FACTUAL ALLEGATIONS

34.     Safe Streets offers home alarm services for ADT.

35.     However, Safe Street's contact with the general public is limited, and it instead relies on a series of calling companies, such as Tektiks, Acquity, Perfectvision Manufacturing Inc., Simple Home 360 Inc. and  MWT & S Biz, LLC.

36.     To increase its sales, and as part of a general cold-call based marketing scheme, Tekitks, through a series of vendors, markets ADT's services for Safe Streets using pre-recorded voice calls to consumers.

37.     Acquity also markets ADT's services for Safe Streets using pre-recorded voice calls to consumers.

The Calls to Mr. Fitzhenry

38.     Plaintiff Fitzhenry is a "person" as defined by 47 U.S.C. § 153(39).

39.     Mr. Fitzhenry's telephone number, (843) 763-XXXX, is registered to a cellular telephone service.

40.     Mr. Fitzhenry was called by a vendor of Tektiks on May 5, 2019.

41.     When Mr. Fitzhenry answered the call, there was a distinctive click and a pause.

7

42. This click and pause is a telltale sign of a predictive dialer.

43. The click and pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

44. As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

45. A predictive dialer is an ATDS as that term is defined by the TCPA.

46. Eventually, a pre-recorded message began to play:

> The reason for this call, is to let you know that we are giving away a free wireless security system valued at $1200 in exchange for simply allowing us to put a small sign in your yard. To find out how we can secure your home, please press 1 now.

47. However, the company was not identified in the pre-recorded message, so Mr. Fitzhenry pressed 1 to investigate the call.

48. When the call connected with a live individual, "Romeo from ADT home security services" answered.

49. "Romeo" is not believed to work for ADT.

50. Plaintiff Fitzhenry then spoke with "Layton from ADT home security services".

51. Plaintiff Fitzhenry was then given a quote for ADT service.

52. Plaintiff Fitzhenry continued to engage in the telemarketing call because the company making the call was not properly identified.

53. Eventually, it was revealed that "Safe Streets ADT" was the entity that had completed the sale.

54. It is believed that "Romeo", who claimed to be with ADT, worked with Tektiks and spoke on the call.

8

55. It is also believed that "Layton from ADT home security services" worked for Safe Streets to promote ADT.

56. Despite the filing of this lawsuit, Mr. Fitzhenry received another telemarketing call from Safe Streets.

57. On August 31, 2019, Mr. Fitzhenry received an automated call on the same number he was called previously by Safe Streets.

58. The call was automated based on the generic content and the fact that a computerized Caller ID, which when called back does not reveal the company, was used to make the call.

59. "Jason" said he was calling from "Home Security Systems".

60. "Home Security Systems" was not actually the company that "Jason" was calling from.

61. In order to identify the company that called, Mr. Fitzhenry engaged the telemarketer.

62. Eventually, it was revealed that Safe Streets was calling to offer ADT goods and services.

The Calls to Mr. Jones

63. Plaintiff Jones is a "person" as defined by 47 U.S.C. § 153(39).

64. Mr. Jones's telephone number, (407) 808-XXXX, is registered to a cellular telephone service.

65. Mr. Jones's number was listed on that National Do Not Call Registry for more than 30 days prior to the call.

66. Mr. Jones was called by Acquity on August 5, 2019.

67. When Mr. Jones answered the call, a pre-recorded message began to play regarding

9

home security services.

68. The company was not identified in the pre-recorded message.

69. After Mr. Jones engaged the telemarketer, Bryan Zavodsky identified himself as being with ADT, but then Mr. Jones learned that he was with Safe Streets.

The Call to Mr. Abramson

70. Mr. Abramson's number, 412-362-XXXX, is his residential telephone number.

71. There is no business associated with that number.

72. That number is only used for personal calls by Mr. Abramson.

73. On October 19, 2020, the Plaintiff received a pre-recorded message call from the Defendant.

74. The message advertised home security, but did not fully identify the company that was calling.

75. To identify the company, the Plaintiff engaged in the telemarketing solicitation.

76. Mr. Abramson eventually spoke with an individual who identified himself as an employee of Simple Home 360.

77. The agent who identified himself to Mr. Abramson as an employee of Simple Home 360 then did a three-way live transfer of the call to an agent who identified himself as an employee of Safe Streets USA.

78. Mr. Abramson subsequently verified the involvement of both Simple Home 360 and Safe Streets USA in the telemarketing call that he received, by calling each of those parties directly.

79. Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during

10

the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiffs and the other call recipients because they were frustrating, obnoxious, annoying, and a nuisance, and disturbed the solitude of Plaintiffs and the class.

## SAFE STREETS' LIABILITY FOR TEKTIKS'S CONDUCT

80. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

81. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

82. In fact, the Federal Communication Commission has instructed that sellers such as Safe Streets may not avoid liability by outsourcing telemarketing to third parties, such as Tektiks, Acquity, Perfectvision Manufacturing Inc., Simple Home 360 Inc. and MWT & S Biz, LLC:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

11

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

83.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

84.     Safe Streets is liable for Tektiks, Acquity, Perfectvision Manufacturing Inc., Simple Home 360 Inc. and  MWT & S Biz, LLC conduct because it controls the manner and means of its telemarketing methods by:

        a)        instructing them that they can use a call center;

        b)        advising them that they could use third parties to assist in the telemarketing;

        c)        requiring that Safe Streets approve all scripting of telemarketing work; and

        d)        providing qualifications for ADT customers to be sent to Safe Streets.

85.     Safe Streets is also liable for Tektiks, Acquity, Perfectvision Manufacturing Inc., Simple Home 360 Inc. and  MWT & S Biz, LLC telemarketing calls, as it explicitly hired Tektiks, Acquity, Perfectvision Manufacturing Inc., Simple Home 360 Inc. and  MWT & S Biz, LLC to bring in new customers and knows it does so through telemarketing.

86.     Safe Streets knew (or reasonably should have known) that Tektiks, Acquity, Perfectvision Manufacturing Inc., Simple Home 360 Inc. and  MWT & S Biz, LLC was violating

---

[1]     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct.

87. Any reasonable seller that accepts telemarketing call leads from lead generators would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

88. Indeed, Safe Streets has previously been sued for the telemarketing conduct of its vendors.

89. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## CLASS ACTION ALLEGATIONS

90. Accordingly, Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of themselves and all others similarly situated and seek certification of the following Class:

> All persons in the United States that Safe Streets USA LLC, Acquity, LLC, Perfectvision Manufacturing Inc., Tektiks Innovative Network USA Inc., Simple Home 360 Inc., MWT & S Biz, LLC and/or their respective subcontractors (hereinafter "the Parties") called from May 10, 2015 through the date of the preliminary approval order and (1) received a telemarketing and/or pre-recorded voice message Call, (2) made by or on behalf of Safe Streets USA LLC and (3) regarding ADT home security services.[2]

---

[2] Calls are defined as telephone calls and/or text messages to any kind of telephone number using any kind of technology or telephony, including, but not limited to, Voice over Internet Protocol.

91.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiffs anticipate the need to amend the class definitions following appropriate discovery.

92.    **Numerosity**: The exact size of the Class is unknown and unavailable to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants made unsolicited prerecorded voice message calls to thousands of individuals who fall into the Class definitions. Class membership can be easily determined from Defendants' records.

93.    **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiff Fitzhenry is a member of both of the Class and Jones is a member of the TCPA class. Furthermore, if Defendants violated the TCPA or SCTPPA with respect to Plaintiffs, then it violated the TCPA or SCTPPA with respect to the other members of the Class. Plaintiffs and the Class sustained the same damages as a result of Defendants' uniform wrongful conduct.

94.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

      a)    How Defendants gathered, compiled, or obtained the telephone numbers of Plaintiffs and the Class;

      b)    Whether Defendants made some or all of the calls without the prior

express written consent of Plaintiffs and the TCPA Class;

     c)     Whether Defendants contacted South Caroline area code phone numbers using inaccurate Caller ID information;

     d)     Whether Defendants' conduct was willful and knowing such that Plaintiffs and the TCPA Class are entitled to treble damages.

95. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

96. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class. Defendants' practices challenged herein apply to and affect the members of the Class uniformly, and Plaintiffs' challenge of those practices hinges on Defendants' conduct with respect to the Class, not on facts or law applicable only to Plaintiffs.

97. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would

increase the delay and expense to all parties due to the complex legal and factual controversies presented in this case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227

### (On Behalf of Plaintiffs and the TCPA Class)

98.   Plaintiffs repeat and reallege the allegations of paragraphs 1 through 84 of this complaint and incorporate them by reference.

99.   Defendants and/or their agents made unsolicited calls to Plaintiffs and the other members of the TCPA Class using a pre-recorded voice and/or ATDS.

100. Defendants made these pre-recorded voice message and/or autodialed calls *en masse* without the consent of Plaintiffs and the other members of the TCPA Class.

101. Defendants' conduct was negligent, or willful or knowing.

102. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendants' conduct, Plaintiffs and the other members of the TCPA Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

103. Plaintiffs and members of the putative TCPA class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an artificial or prerecorded voice in the future.

16

**SECOND CAUSE OF ACTION**
**Violation of the SCTPPA**

**(On Behalf of Plaintiff Fitzhenry and the SCTPPA Class)**

104. Plaintiff Fitzhenry repeats and realleges the allegations of paragraphs 1 through 85 of this complaint and incorporates them by reference.

105. The Defendant violated the SCTPPA by (a) initiating a telemarketing call to the Plaintiff Fitzhenry, a South Carolina resident, using an inaccurate or manipulated Caller ID or (b) by the fact that others caused the initiation of those calls on its behalf. *See* § 37-21-70(B).

106. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA. *See* § 37-21-80. The SCTPPA also permits the recovery of attorney's fees for a prevailing plaintiff. *Id.*

**Relief Sought**

WHEREFORE, for themselves and all class members, Plaintiffs request the following relief:

A.      Because of Defendants' violations of the TCPA, Plaintiffs seeks for themselves and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

B.      Plaintiffs and members of the Classes are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

C.      An order certifying this action to be a proper class action under Federal Rule of

Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding

that Plaintiffs is a proper representative of the Classes, and appointing the lawyers and law firms

representing Plaintiffs as counsel for the Classes

       D.     That the Court enter a judgment awarding Plaintiff Fitzhenry and all class

members statutory damages of $1,000 for each negligent violation and $5,000 for each willful

violation of the SCTPPA, as well as his attorneys fees; and

       E.     Such other relief as the Court deems just and proper.

Dated: July 30, 2021

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com

Avi R. Kaufman
Florida State Bar # 84382
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

*Counsel for Plaintiffs*

*/s/ Ted Johnson*
Ted Lewis Johnson
North Carolina State Bar # 39791
PO Box 5272
Greensboro, NC 27435
Telephone: (336) 252-8596
Email: tedlewisjohnson@tedlewisjohnson.com

*Local Civil Rule 83.1(d) Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 30, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Anthony I. Paronich*
Anthony I. Paronich