IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-00394-BO

| | |
|---|---|
| STEWART ABRAMSON, PAUL JONES AND MARK FITZHENRY, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFFS,<br><br>v.<br><br>SAFE STREETS USA LLC, and TEKTIKS INNOVATIVE NETWORK USA INC,<br><br><br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.     INTRODUCTION

Plaintiffs Paul Jones, Mark Fitzhenry, and Stewart Abramson ("Plaintiffs") and Defendant

Safe Streets USA LLC ("Safe Streets") have reached a Class Action Settlement Agreement and

Release (the "Agreement" or "Settlement") in this proposed class action brought under the

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the South Carolina Telephone

Privacy Protection Act ("SCTPPA"), S.C. Code § 37-21-10. The Agreement,[1] which is subject to

this Court's approval, requires Safe Streets to create a non-reversionary Settlement Fund of one

million five hundred thousand dollars ($1,500,000) for the benefit of Plaintiffs and settlement class

members. Class members who submit a simple claim form are anticipated to receive a cash payment

of more than $100, which far exceeds the typical value of payments in such settlements.

---

[1] The Agreement is attached hereto as Exhibit 1.  Capitalized terms used herein, unless otherwise defined, have the same definitions as those terms in the Agreement.

The parties reached the Settlement after more than two years of contentious litigation commenced in the Southern District of Florida (ECF 1) before being transferred to this Court (ECF 31). The parties' litigation involved extensive first- and third-party discovery (including in Canada by means of letters rogatory issued by this Court (ECF 83), and contested in Canada), and resulted in significant discovery disputes, some of which the parties were able to resolve, and others which required the Court's involvement (ECF 64, 68). It also involved the briefing and denial of a dispositive motion (ECF 73), and Plaintiffs' engagement of an expert in telecommunications and telephony that provided testimony on calling software relevant to the action (*see* ECF 103). *See* Declaration of Avi Kaufman, attached as Exhibit 2, at ¶ 2.

Settlement discussions began in March 2021 with a full-day mediation session conducted by Hon. Morton Denlow (Ret.) of JAMS, Inc. that did not result in an agreement. *Id*. After mediation, with the continued oversight of Judge Denlow, the parties exchanged additional information relevant to evaluating settlement. The parties also conducted further analysis of calling data obtained through discovery. This process and corresponding negotiations over the court of the next three and a half months ultimately resulted in the Settlement Agreement being presented to this Court for preliminary approval.

Importantly, by the time the parties reached an agreement, they were well aware of the strengths and weaknesses of their respective positions and of the risks associated with pursuing the case through trial, especially in light of the changing legal landscape of the Telephone Consumer Protection Act. *Id*. If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled legal questions.

The proposed settlement is fair, reasonable, adequate, and the anticipated per-claimant awards are well in line with TCPA settlements approved across the country. Accordingly, Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the settlement; (2)

2

provisionally certify the proposed settlement class; (3) appoint as class counsel the law firms Paronich Law, P.C. and Kaufman P.A.; (4) appoint Plaintiffs as class representatives; (5) approve the proposed notice plan; (6) appoint EPIQ to serve as settlement administrator; and (7) schedule the final fairness hearing and related dates.

## II.     PROCEDURAL BACKGROUND

On May 10, 2019, plaintiff Mark Fitzhenry filed a putative class action complaint in the United States District Court for the Southern District of Florida against ADT LLC ("ADT") and Safe Streets USA LLC ("Safe Streets"). On August 7, 2019, Mr. Fitzhenry amended his complaint, adding Tektiks Innovative Network USA Inc. ("Tektiks") and removing ADT as defendants. On August 16, 2019, the action was transferred to this Court, the Western Division of the Eastern District of North Carolina, where Safe Streets is headquartered. On November 4, 2019, a second amended complaint was filed that included Paul Jones as a plaintiff. On March 11, 2020, a third amended complaint was filed that added Acquity, LLC as a defendant.[2]  On July 30, 2021, a fourth amended complaint was filed that added as a plaintiff Mr. Abramson who was the named-plaintiff in a separate action against Safe Streets filed in the Southern District of Florida on November 16, 2020 (Civil Action No. 20-cv-62325).

The parties reached the Settlement after more than two years of contentious litigation, which included significant first- and third-party discovery, motion practice, and expert testimony.  *See* Kaufman Decl. at ¶ 2.

The parties engaged in a full-day mediation session on March 15, 2021 with the able assistance of Hon. Morton Denlow (Ret.) of JAMS.  While the parties were not able to settle during mediation, the parties continued settlement negotiations with the mediator's assistance and reached

---

[2] Service on Acquity required, among other things, this Court's leave to engage in substituted service (ECF 73).

a settlement in principle after completing additional discovery, including expert analyses.

Plaintiffs believe that the claims asserted in the Action have merit. Kaufman Decl. at ¶ 3. Nonetheless, Plaintiffs and Class Counsel recognize and acknowledge the expense, time, and risk associated with continued prosecution of the Action through class certification, trial, and any subsequent appeals. *Id*. Plaintiffs' counsel has taken into account the strength of Defendant's defenses, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, the inherent delays in such litigation, and, in particular, the risk that a change in the law.

And, in the context of the TCPA and SCTPPA, the risk of an unfavorable change in the law that could entirely defeat class members' claim is not merely hypothetical.  At present, there is ongoing district court scrutiny regarding what constitutes an autodialer in light of the Supreme Court's recent decision in *Facebook*, the constitutionality of the TCPA in light of the Supreme Court's decision last year in *Barr*, and the constitutionality of the SCTPPA. *Id*.; *see Timms v. USAA Fed. Sav. Bank*, No. 3:18-cv-01495-SAL, 2021 U.S. Dist. LEXIS 108083 (D.S.C. June 9, 2021) (finding that under the Supreme Court's ruling in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (Apr. 1, 2021), to be an autodialer a system must randomly or sequentially generate the telephone numbers to be called); *Creasy v. Charter Communs., Inc.*, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020) (finding that TCPA claims based on calls preceding the Supreme Court's ruling in *Barr v. Am. Assn. of Political Consultants, Inc.*, 591 U.S. ___, (July 6, 2020), are not actionable because the TCPA was unconstitutional until a 2015 amendment was severed in *Barr*); *United Resource Systems, Inc. v. The State of South Carolina, by and through Alan Wilson, in his official capacity as Attorney General of South Carolina*, Case No. 3:21-cv-00364-JFA (D.S.C.) (seeking declaratory and injunctive relief and arguing that the Anti-Spoofing Provision is in conflict with, and therefore

preempted by, the federal Truth in Caller ID Act of 2009, Public Law 111-331, 47 U.S.C. § 227(e), and that the Anti-Spoofing Provision is unconstitutional).

Plaintiffs' counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation, even if successful, may have ultimately delivered none. Kaufman Decl. at ¶ 4. Therefore, Plaintiffs and Class Counsel believe that it is desirable that the Released Claims be fully and finally compromised, settled, dismissed with prejudice, and barred pursuant to the terms set forth herein. *Id*. Based on their evaluation, Plaintiffs and Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate for the Settlement Class, and that it is in the best interests of the Settlement Class to settle the Released Claims pursuant to the terms and provisions of this Agreement. *Id.*

### III. THE PROPOSED SETTLEMENT

**A. The Settlement Class**

The proposed Settlement Class includes: All persons in the United States that Safe Streets USA LLC, Acquity, LLC, Perfectvision Manufacturing Inc., Tektiks Innovative Network USA Inc., Simple Home 360 Inc., MWT & S Biz, LLC and/or their respective subcontractors called from May 10, 2015 through the date of the preliminary approval order and (1) received a telemarketing and/or pre-recorded voice message Call[3], (2) made by or on behalf of Safe Streets USA LLC, and (3) regarding ADT home security services. Agreement at ¶ 1.29.

**B. Settlement Relief**

The Settlement provides meaningful monetary relief. Pursuant to the Agreement, Safe Streets agrees to establish a non-reversionary Settlement Fund of $1,500,000. The Settlement Fund

---

[3] As part of the Settlement Agreement, "Call" is defined to include text messages, which are also regulated by the TCPA.

shall be used to pay all approved Claims, the Administration Costs, the Fees, Costs, and Expenses Award, and/or the Service Payments. Agreement at ¶ 1.32.

**C.    Service Award and Class Counsel Fees and Expenses**

Pursuant to the Agreement, Class Counsel may apply to the Court for a reasonable award of a Service Payment of not more than $5,000.00 for each class representative.  Safe Streets reserves the right to respond to such a request as it deems appropriate. Agreement at ¶ 2.1.3.

Class Counsel may apply to the Court for a reasonable award of fees, costs, and expenses. Settlement Class Counsel will apply for attorneys' fees of not more than one-third of the Settlement Fund and will apply for not more than $50,000 in out-of-pocket costs and expenses.  Safe Streets reserves the right to respond to Settlement Class Counsel's requests as it deems appropriate. Agreement at ¶ 2.1.4.

**D.    Notice Program**

Notice shall be provided to Settlement Class Members in three different ways: Postcard Notice, Long-Form Notice on the Settlement Website, and Publication Notice. The form of the proposed Postcard Notice, Long-Form Notice, and Publication Notice are attached as Exhibits 2, 3 and 4 to the Agreement.

The proposed notices include, among other information: a description of the material terms of the Settlement, including how to file a Claim Form, a date by which members of the Settlement Class may exclude themselves from or "opt-out" of the Settlement Class; a date by which members of the Settlement Class may object to the Settlement; the date upon which the Final Approval Hearing is scheduled to occur; and the address of the Settlement Website at which members of the Settlement Class may access this Agreement and other related documents and information.

On or before 30 calendar days after entry of the Preliminary Approval Order, the Settlement Administrator shall send Mail Notice to those Settlement Class Members for whom an address can

be located through reasonable effort and shall send Publication Notice via the internet with nationwide reach.

The anticipated administration costs are approximately $310,000. Kaufman Decl. at ¶ 5. Those costs are reasonable compared to the size of the Settlement Fund and in light of the costs for Mailed Notice to thousands of Class Member and Publication Notice with nationwide reach.

## E.     Claims

To make a claim, members of the Settlement Class must submit by the Claims Deadline a valid and timely Claim Form, copies of which is attached to the Agreement at Exhibits 3 and 5 (Postcard Notice Claim Form and Publication Notice Claim Form, respectively), to the Settlement Administrator. Agreement at § 5. If a Settlement Class Member fails to fully complete a Claim Form, the Claim Form will be invalid and rejected by the Settlement Administrator.  Prior to rejection of a Claim Form, the Settlement Administrator shall make reasonable efforts to communicate with the Claimant in an effort to remedy clearly curable deficiencies in the Claim Form submitted, except in instances where (i) the Claim is untimely or (ii) the Claimant does not appear to be a Settlement Class Member.

## F.     Opt-Out and Objection Procedures

Any Settlement Class Member who has not submitted a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement, the Fees, Costs, and Expenses Award, or the Service Payments must object in writing.  Objections may be submitted to the Settlement Administrator or the Court by postal mail and postmarked by the Response Deadline. Any objection regarding or related to the Settlement Agreement must:  (a) clearly identify the case name and number; (b) include the full name and the unique identification number for the Settlement Class Member assigned by the Settlement Administrator; (c) include the address, telephone number, and email address of the objecting Settlement Class Member; (d)

7

include the full name, address, telephone number, email address, and the state bar(s) of admission of the objector's counsel (if the objector is represented by personal counsel); and (e) provide a detailed explanation stating the specific reasons for the objection, including any legal or factual support and any evidence in support of the objection, in accordance with Rule 23(e)(5) of the Federal Rules of Civil Procedure.

Members of the Settlement Class who wish to opt-out of and be excluded from the Settlement must submit a request to the Settlement Administrator electronically (through the Settlement Website) or by postal mail. All requests for exclusion must be in writing and must: (a) clearly identify the case name and number; (b) include the full name and the unique identification number for the Settlement Class Member assigned by the Settlement Administrator; (c) include the address, telephone number, and email address of the Settlement Class Member seeking exclusion; (d) contain a statement that the requestor does not wish to participate in the settlement; and (e) be signed personally by the Settlement Class Member. To be excluded from the settlement, the request for exclusion must be submitted by the Response Deadline.

**G.     Release**

The Release is narrowly tailored under the Agreement to the claims or types of claims that could have been asserted in the action that arise from the Released Parties' use of any telephone, any telephone or dialing equipment or an "artificial or prerecorded voice," and/or any text messaging platform to contact or attempt to contact members of the Settlement Class. The release includes any actions by ADT and/or Safe Streets and any actions taken on behalf of ADT and/or Safe Streets by alleged agents of ADT and/or Safe Streets as alleged in the Complaint. Agreement at ¶ 1.22.

## IV. THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Plaintiffs respectfully request that the Court provisionally certify the proposed Settlement Class for settlement purposes under Federal Rule of Civil Procedure 23(a) and (b)(3). Such certification will allow the Settlement Class to receive notice of the Settlement and its terms, including the right to submit a claim and recover money if the Settlement is approved, the right to be heard on the Settlement's fairness, the right to opt out of the Settlement, and the date, time and place of the formal Settlement hearing. For the following reasons, certification of the Class for Settlement purposes is appropriate under Rule 23(a) and (b)(3).

### A. Rule 23(a) requirements

<u>Numerosity is satisfied.</u>

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no set minimum number of potential class members that fulfills the numerosity requirement. *See Holsey v. Armour & Co.,* 743 F.2d 199, 217 (4th Cir. 1984).

The proposed Settlement Class consists of at least 20,000 identifiable members. *See* Kaufman Decl. at ¶ 14. Numerosity is therefore satisfied.

<u>Commonality is satisfied.</u>

Rule 23(a)(2) requires that there is "a common question of law or fact among the members of the class." Fed. R. Civ. P. 23(a)(2). To meet the commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011).

Here, the common questions are dispositive, apply equally to all class members, and can be resolved using uniform proof and legal analysis. They include: (1) whether a telemarketing and/or prerecorded voice call was made to class members; (2) whether Safe Streets had express written

consent to make the calls; (3) whether Safe Streets is vicariously liable for the calls; and (4) whether Safe Streets' conduct was willful and knowing such that Plaintiffs and the Class are entitled to treble damages. These legal and factual questions are shared by all class members, and the uniformity of the applicable law—the TCPA—makes resolution of these questions on a class-wide basis viable and efficient.

Plaintiffs' claims are typical of the Settlement Class.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. Typicality is satisfied where the claims are based on the same legal theory. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 378 (D.S.C. 2015) ("The typicality requirement is met if a plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory."). Typicality does not require that every class representative have exactly the same claims as every member of the class." *Moodie*, 309 F.R.D. at 378.

Here, Plaintiffs' and Settlement Class members' claims arise from the same course of events: telemarketing or prerecorded voice calls were made to Plaintiffs and Settlement Class members by or on behalf of Safe Streets regarding ADT home security services as part of the same telemarketing campaigns by certain Safe Streets dealers and their subcontractors. Plaintiffs and proposed Settlement Class members all seek statutory damages for these calls pursuant to the same legal theory. Typicality is therefore satisfied.

Plaintiffs and counsel will adequately represent the proposed Settlement Class.

The last Rule 23(a) requirement assures that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement involves "a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified,

experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs'
claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and
adequate representation." *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C.
2000).

Both of these requirements are met. Plaintiffs' interests in this litigation are aligned with
those of the class. All seek recovery for unlawful calls pursuant to the TCPA. Further, Plaintiffs and
the Settlement Class are represented by qualified and competent Class Counsel who have extensive
experience and expertise prosecuting complex class actions, and TCPA class actions, in particular.
Class Counsel has vigorously litigated this action for over two years in multiple courts and
countries, and will continue to vigorously prosecute this matter through completion. *See* Kaufman
Decl. ¶¶ 8-13 and Declaration of Anthony Paronich, attached as Exhibit 3, at ¶¶ 2-8. Adequacy is
therefore satisfied.

## B. Rule 23(b)(3) requirements

Class certification under Rule 23(b)(3) is appropriate where (1) "the questions of law or fact
common to class members predominate over any questions affecting only individual members;" and
(2) "a class action is superior to other available methods for fairly and efficiently adjudicating the
controversy." Fed. R. Civ. P. 23(b)(3); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804,
809, 131 S. Ct. 2179, 2184 (2011).

Common issues predominate.

The predominance requirement tests whether proposed classes are "sufficiently cohesive to
warrant adjudication by representation." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319
(4th Cir. 2006) (quotation and internal marks omitted). Predominance differs from the commonality
requirement because it focuses "not only on the existence of common questions, but also on how

those questions relate to the controversy at the heart of the litigation." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 366 (4th Cir. 2014).

This case is particularly well-suited for class treatment. The central issues in this case are: (1) whether a telemarketing or prerecorded voice call was made to class members; (2) whether Safe Streets had express written consent to make the calls; (3) whether Safe Streets is vicariously liable for the calls; and (4) whether Safe Streets's conduct was willful and knowing such that Plaintiffs and the Class are entitled to treble damages. A trial would focus on these common issues based on Safe Streets' and its vendors testimony and records and expert testimony, and would not require individualized proof from class members.

   <u>A class action is superior</u>.

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. The superiority requirement is often met where, as here, class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 426 (4th Cir. 2003) (class treatment superior where it lowers litigation costs "through the consolidation of recurring common issues").

Since the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). And, resolution of thousands of claims in one action is far superior to individual lawsuits, promoting consistency and efficiency of adjudication. *See Gunnells*, 348 F.3d at 427 (noting class litigation "promotes consistency of results, giving defendants the benefit of finality and repose").

## V. THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A. The settlement approval process

A class action settlement requires court approval. Fed. R. Civ. P. 23(e); *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158 (4th Cir. 1991). As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *Id.* at 158-159. The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g*., *id.*; *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litig.* ("MCL 4th") § 21.632, at 414 (4th ed. 2004); *Grice v. PNC Mortgage Corp. of Am.,* No. 97-3084, 1998 WL 350581, at *2 (D. Md. May 21, 1998) (endorsing MCL 4th's two-step process). In the first stage, the parties submit the proposed settlement to the Court for preliminary approval. In the second stage, following preliminary approval, the class is notified and a fairness hearing scheduled at which the Court determines whether to approve the settlement. *See Bicking v. Mitchell Rubenstein & Assocs.,* No. 11-78, 2011 WL 5325674, at *4 (E.D. Va. Nov. 3, 2011). This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* 5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 13:1 (5th ed. updated December 2016).

Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether sending notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 827 (E.D.N.C. 1994) (holding that

the question at preliminary approval stage is simply whether there is "probable cause" to justify notifying class members of proposed settlement).

**B.**     **Criteria for settlement approval**

Fairness and adequacy are the touchstones of class action settlement approval. *Jiffy Lube*, 927 F.2d at 158. The factors that merit consideration during the approval process may be broken down into two major categories: those which go to "fairness" and those which go to "adequacy" of a settlement. *Id.*

<u>The proposed Settlement Agreement is fair</u>.

Courts consider the following factors when determining whether a proposed settlement is fair: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that has been conducted, (3) the circumstances surrounding negotiations, and (4) the experience of counsel in the area of class action litigation. *Jiffy Lube*, 927 F.2d at 159. All four factors favor approving the settlement here.

The parties reached a settlement after two years of contentious litigation in multiple courts and countries, including significant discovery (and disputes), substantive motion practice, and expert disclosures. Kaufman Decl. ¶ 2. Defendants and the third-parties subpoenaed in discovery produced thousands of pages of documents, including contracts, communications, call logs, technical documents, and financial documents. *Id.* Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in extensive formal discovery with Defendants and third parties.

Class Counsel's review of that discovery and attendant issues enabled them to gain an understanding of the evidence related to central questions in the action and prepared them for well-informed settlement negotiations. In fact, Class Counsel have far exceeded the work often done in class actions to conduct a thorough analysis of the issues. *See, e.g., Williams v. Costco Wholesale*

14

*Corp.*, No. 02-cv-2003, 2010 U.S. Dist. LEXIS 19674, at *16 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery to have a clear view of the strengths and weaknesses of the case and to support the settlement.").

The Settlement here is the result of extensive, arms'-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this action. Kaufman Decl. ¶ 4. Furthermore, Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. Kaufman Decl. ¶ 8; Paronich Decl. ¶ 2. Class Counsel zealously represented Plaintiffs and the Settlement Class members' interests throughout the litigation and continue to do so.

The parties reached agreement only after a full day mediation and months of continued, protracted negotiations with the assistance of Hon. Morton Denlow (Ret.), a JAMS mediator. Kaufman Decl. ¶ 4. At all times the negotiations were at arms'-length and free from collusion. *Id.* Plaintiffs' counsel steadfastly advocated for substantial settlement relief. Plaintiffs and Plaintiffs' counsel also were well aware of the risks they faced if they continued to litigate, particularly the risks inherent in class certification and the changing legal landscape concerning the TCPA and SCTPPA. *Id.* at ¶ 3.

Plaintiffs relied on the judgment of their counsel, who have extensive experience litigating, settling, and trying TCPA and other class actions. In such circumstances, it may be presumed that a settlement is fair. *See Good v. W. Va.-Am. Water Co.*, No. 14-1374, 2017 WL 2884535 (S.D. W. Va. July 6, 2017) (finding "no evidence of chicanery" in the circumstances surrounding the settlement and noting counsel's "abundance of experience" and the advanced stage of the litigation).

The proposed Settlement Agreement is adequate.

In determining whether a settlement is adequate, courts consider (1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the

plaintiff is likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Jiffy Lube*, 927 F.2d at 159.

The most important factor in weighing the adequacy of a proposed settlement is the strength of the plaintiff's claims on the merits combined with any difficulties the plaintiff would likely encounter if they chose to litigate on their own. *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015). Plaintiffs and Class Counsel believe that the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial. Defendants deny any liability and are willing to litigate vigorously, as they have done for more than two years. The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendants through trial and potentially appeals. Kaufman Decl. at ¶ 3.

Plaintiffs' counsel also have taken into account the strength of Defendants' defenses, difficulties in proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, and the inherent delays in such litigation. Plaintiffs' counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class. Based on their evaluation of all of these factors, Plaintiffs and Plaintiffs' counsel have determined that the Settlement is in the best interests of Plaintiffs and the Settlement Class, who otherwise may have received nothing. *Id*. at ¶ 4.

The monetary relief, which is anticipated to result in a payment of more than $100 per claimant, places the Settlement well within the range of possible approval. Moreover, Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. Courts recognize that the "essence of settlement is compromise," and a settlement need not represent a complete victory for the plaintiffs for it to be approved. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (quoting *Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305, 315 (7th Cir.

1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)).  Although the TCPA provides for statutory damages of $500 for each violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. Indeed, this Settlement provides an excellent result for the class in comparison to other TCPA settlements approved across the country. *See, e.g., In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30); *Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS (CKD),  2015 U.S. Dist. LEXIS 137299, at *19 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *In re Capital One TCPA Litig*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) (providing for payments of $34.60 to each claiming class member).

"The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining. Rather, it is called upon to evaluate the probabilities of success upon a trial and to compare the benefits thereof with the terms of compromise." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

For all these reasons, the settlement is well-within the range of reasonableness, and otherwise fair and adequate. It should therefore be preliminarily approved, and notice should be sent to the Settlement Class.

## VI. THE NOTICE PROGRAM IS CONSTITUTIONALLY SOUND

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* MCL Fourth § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

The Notice program satisfies this standard. As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement. It will advise Settlement Class members of their options for remaining part of the Settlement, for objecting to the Settlement, Class Counsel's attorneys' fee application and/or request for service award, for opting-out of the Settlement, and for submitting a claim. Through the direct Postcard Notice, Long-Form Notice, and Publication Notice, the Notice Plan is designed to reach a high percentage of Settlement Class members, and exceeds the requirements of Constitutional Due Process.

The proposed forms of notice, attached as Exhibits 2-4 to the Settlement Agreement, are clear, straightforward, and provide Settlement Class members with enough information to evaluate whether to participate in the settlement. Thus, the Notice satisfies the requirements of Rule 23 and due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement). The Notice Program constitutes the best notice practicable under the circumstances, provides sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23.

## VII. PROPOSED SETTLEMENT APPROVAL SCHEDULE

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered.

Class Counsel propose the following schedule:

| | |
|---|---|
| Last day for the Settlement Administrator to publish the Settlement Website and begin operating a toll-free telephone number, email address, and post office box to accept inquiries from Settlement Class Members | 30 calendar days after entry of Preliminary Approval Order |
| Settlement Administrator begins providing notice to Settlement Class Members | On or before 30 calendar days after entry of Preliminary Approval Order |
| Last day for Settlement Class Members to submit Claim Forms, object, or request exclusion from the Settlement Class | 75 calendar days after entry of Preliminary Approval Order |
| Last day for Settlement Class Counsel to file motion in support of Final Approval Order and Final Judgment | 14 calendar days before Final Approval Hearing |
| Final Approval Hearing | At least 100 calendar days after entry of Preliminary Approval Order |

## VIII. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant this Motion and enter the submitted Proposed Order, preliminarily approve the parties' proposed Settlement Agreement, and establish a schedule to complete the tasks necessary to effectuate the proposed settlement.

A proposed Preliminary Approval Order is attached as Exhibit 4.

Dated: August 2, 2021

Respectfully submitted,

*/s/ Avi R. Kaufman*
Avi R. Kaufman, Florida State Bar # 84382
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[f] (508) 318-8100
anthony@paronichlaw.com

*Counsel for Plaintiff*

*/s/ Ted Johnson*
Ted Lewis Johnson
North Carolina State Bar # 39791 PO
Box 5272
Greensboro, NC 27435
Telephone: (336) 252-8596
Email: tedlewisjohnson@tedlewisjohnson.com

*Local Civil Rule 83.1(d) Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 2, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Avi R. Kaufman*