IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-00394-BO

STEWART ABRAMSON, PAUL JONES )
AND MARK FITZHENRY,
ON BEHALF OF THEMSELVES AND )
ALL OTHERS SIMILARLY SITUATED, )
)
PLAINTIFFS, )
)
v. )
)
SAFE STREETS USA LLC, and TEKTIKS )
INNOVATIVE NETWORK USA INC, )
)
)
)
DEFENDANTS. )

## DECLARATION OF AVI R. KAUFMAN

Avi R. Kaufman declares as follows:

1. I am one of the attorneys designated as Class Counsel for Plaintiffs under the Settlement Agreement ("Settlement" or "Agreement") entered into with Defendant Safe Streets.[1] I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2. The Parties' proposed Settlement is exceedingly fair and well within the range of Preliminary Approval for several reasons. First, it provides immediate monetary relief for Settlement Class Members where their recovery, if any, would otherwise be uncertain. Second, the parties reached the Settlement after more than two years of contentious litigation commenced in the Southern District of Florida (ECF 1) before being transferred to this Court (ECF 31). The parties'

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Agreement.

1

litigation involved extensive first- and third-party discovery (including in Canada by means of letters rogatory issued by this Court (ECF 83), and contested in Canada), and resulted in significant discovery disputes, some of which the parties were able to resolve, and others which required the Court's involvement (ECF 64, 68).  It also involved the briefing and denial of a dispositive motion (ECF 73), and Plaintiffs' engagement of an expert in telecommunications and telephony that provided testimony on calling software relevant to the action (*see* ECF 103). Defendants and the third-parties subpoenaed in discovery produced thousands of pages of documents, including contracts, communications, call logs, technical documents, and financial documents. Class Counsel's review of that discovery and attendant issues enabled them to gain an understanding of the evidence related to central questions in the action and prepared them for well-informed settlement negotiations and they have exceeded the work often done in class actions to conduct a thorough analysis of the issues.  Settlement discussions began in March 2021 with a full-day mediation session conducted by Hon. Morton Denlow (Ret.) of JAMS, Inc. on March 15, 2021 that did not result in an agreement. After mediation, with the continued oversight of Judge Denlow, the parties exchanged additional information relevant to evaluating settlement.  The parties also conducted further analysis of calling data obtained through discovery.  This process and corresponding negotiations over the court of the next three and a half months ultimately resulted in the Settlement Agreement being presented to this Court for preliminary approval. By the time the parties finalized an agreement, they were well aware of the strengths and weaknesses of their respective positions and of the risks associated with pursuing the case through trial, especially in light of the changing legal landscape of the Telephone Consumer Protection Act.

      3.      Plaintiffs believe that the claims asserted in the Action have merit. Nonetheless, Plaintiffs and Class Counsel recognize and acknowledge the expense, time, and risk associated with

continued prosecution of the Action through class certification, trial, and any subsequent appeals. Plaintiffs' counsel has taken into account the strength of Defendant's defenses, difficulties in obtaining class certification and proving liability, the uncertain outcome and risk of the litigation, especially in complex actions such as this one, the inherent delays in such litigation, and, in particular, the risk that a change in the law. And, in the context of the TCPA and SCTPPA, the risk of an unfavorable change in the law that could entirely defeat class members' claim is not merely hypothetical. At present, there is ongoing district court scrutiny regarding what constitutes an autodialer in light of the Supreme Court's recent decision in *Facebook*, the constitutionality of the TCPA in light of the Supreme Court's decision last year in *Barr*, and the constitutionality of the SCTPPA. *See Timms v. USAA Fed. Sav. Bank*, No. 3:18-cv-01495-SAL, 2021 U.S. Dist. LEXIS 108083 (D.S.C. June 9, 2021) (finding that under the Supreme Court's ruling in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (Apr. 1, 2021), to be an autodialer a system must randomly or sequentially generate the telephone numbers to be called); *Creasy v. Charter Communs., Inc.*, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020) (finding that TCPA claims based on calls preceding the Supreme Court's ruling in *Barr v. Am. Assn. of Political Consultants, Inc.*, 591 U.S. \_\_\_, (July 6, 2020), are not actionable because the TCPA was unconstitutional until a 2015 amendment was severed in *Barr*); *United Resource Systems, Inc. v. The State of South Carolina, by and through Alan Wilson, in his official capacity as Attorney General of South Carolina*, Case No. 3:21-cv-00364-JFA (D.S.C.) (seeking declaratory and injunctive relief and arguing that the Anti-Spoofing Provision is in conflict with, and therefore preempted by, the federal Truth in Caller ID Act of 2009, Public Law 111-331, 47 U.S.C. § 227(e), and that the Anti-Spoofing Provision is unconstitutional).

4. The Settlement here is the result of extensive, arms'-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual

issues of this action. The parties reached agreement only after a full day mediation and months of continued, protracted negotiations with the assistance of Hon. Morton Denlow (Ret.), a JAMS mediator. At all times the negotiations were at arms'-length and free from collusion. Plaintiffs' counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation, even if successful, may have ultimately delivered none. Therefore, Plaintiffs and Class Counsel believe that it is desirable that the Released Claims be fully and finally compromised, settled, dismissed with prejudice, and barred pursuant to the terms set forth herein. Based on their evaluation, Plaintiffs and Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate for the Settlement Class, and that it is in the best interests of the Settlement Class to settle the Released Claims pursuant to the terms and provisions of this Agreement.

5. The anticipated administration costs are approximately $310,000. *See* administration cost estimate attached hereto as Exhibit A. Those costs are reasonable compared to the size of the Settlement Fund and in light of the costs for Mailed Notice to thousands of Class Member and Publication Notice with nationwide reach.

6. The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from or "opt-out" of the Settlement; a date by which Settlement Class Members may object to the Settlement; the process for submission of and a date by which a valid and timely Claim Form must be submitted; Class Counsel's fee application and/or the request for a Service Award; and the date of the Final Approval Hearing. The Notice Plan here is straightforward, easy to understand for Settlement Class Members, and designed to inform members of their rights under the Agreement.

The Notice Program will inform Settlement Class Members of the substantive terms of the Settlement. It will advise Settlement Class Members of their options for remaining part of the Settlement, for objecting to the Settlement, Class Counsel's attorneys' fee application and/or request for service award, for opting-out of the Settlement, for submitting a claim, and how to obtain additional information about the Settlement. Through the provision of direct mailed notice, long-form notice, and publication notice, the Notice Plan is designed to reach a high percentage of Settlement Class Members and exceeds the requirements of Constitutional Due Process.

7. Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement. The Settlement was the result of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to any segments of the class.

8. Class Counsel have extensive experience and expertise prosecuting complex class actions, and are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases.

9. Since 2008, the attorneys of Kaufman P.A. have worked on consumer class action cases that have ended in class-wide settlements totaling more than $100 million. Kaufman P.A.'s attorneys have also successfully recovered millions of dollars in settlements and judgments for plaintiffs in breach of contract actions in the media, real estate, fashion, healthcare, telecommunications, and banking industries.

10. I have a degree in government from Harvard University and a JD from Georgetown University Law Center. Prior to founding Kaufman P.A., I worked at Kopelowitz Ostrow Ferguson Weiselberg Gilbert and Carlton Fields Jorden Burt in their national class action and commercial litigation practice groups. I am a member of the Florida bar, and am admitted to practice in all federal

district courts in Florida and in the Eleventh Circuit. I am also admitted to practice in the Eastern District of Wisconsin, Eastern District of Michigan, Northern District of Illinois, District of Colorado, and Western District of Arkansas.

11. Rachel E. Kaufman, Esq. has degrees in communications and philosophy from Northwestern University and a JD from Boston University School of Law. Prior to joining Kaufman P.A., Rachel worked at Lash & Goldberg in its commercial litigation practice and Epstein, Becker & Green in its class action, commercial litigation, and healthcare practices. Rachel is a member of the California, Florida, and Washington, D.C. bars. Rachel is also admitted to practice in all federal district courts in California, the Southern and Middle Districts of Florida, the Eleventh Circuit, and the Ninth Circuit.

12. During the last few years, the attorneys of Kaufman P.A. have specialized in matters arising under the TCPA and have been appointed as class counsel in the following actions:

- *Gottlieb v. CITGO Petroleum Corporation* (S.D. Fla. 2017), a nationwide Telephone Consumer Protection Act class action resulting in an $8.3 million class wide settlement.

- *Broward Psychology, P.A. v. SingleCare Services, LLC* (Fla. Cir. Ct. 2019), a Florida Telephone Consumer Protection Act class action resulting in a $925,110 class wide settlement.

- *Van Elzen v. Educator Group Plans, et. al.* (E.D. Wis. 2019), a nationwide Telephone Consumer Protection Act class action resulting in a $900,000 class wide settlement.

- *Halperin v. YouFit Health Clubs, LLC* (S.D. Fla. 2019), a nationwide Telephone Consumer Protection Act class action resulting in a $1.4 million class wide settlement.

- *Armstrong v. Codefied Inc.* (E.D. Cal. 2019), a nationwide Telephone Consumer Protection Act class action resulting in a $2.2 million class wide settlement.

- *Itayim v. CYS Group, Inc.* (S.D. Fla. 2020), a Florida Telephone Consumer Protection Act class action resulting in a $492,250 class wide settlement.

- *Bulette v. Western Dental, et al.* (N.D. Cal. 2020), a nationwide Telephone Consumer Protection Act class action resulting in a $9.7 million class wide settlement.

- *Donde v. Freedom Franchise Systems, LLC et al.* (S.D. Fla. 2020), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $948,475.50 class wide settlement.

- *Izor v. Abacus Data Systems, Inc.* (N.D. Cal. 2020), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $1.95 million class wide settlement.

- *Fitzhenry v. Independent Home Products, LLC* (D.S.C. 2020), a nationwide Telephone Consumer Protection Act class action making $5.16 million available to the settlement class.

- *Judson v. Goldco Direct LLC* (C.D. Cal. 2020), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $1.5 million class wide settlement.

- *Hicks v. Houston Baptist University* (E.D.N.C. 2021), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $375,000 class wide settlement.

- *Lalli v. First Team Real Estate* (C.D. Cal. 2021), a nationwide Telephone Consumer Protection Act class action settlement resulting in a $478,500 class wide settlement. (Final Approval hearing scheduled for November 5, 2021).

13. Class Counsel zealously represented Plaintiffs and the Settlement Class Members' interests throughout the litigation and will continue to do so.

14. The Settlement Class consists of at least 20,000 identifiable members.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: August 2, 2021   /s/ Avi R. Kaufman
Avi R. Kaufman

# EXHIBIT A


# Safe Streets TCPA Settlement

## Project Requirements and Estimated Volumes

| | |
|---|---|
| Total Known Notice Population (phone #s) | 25,000 |
| Reverse Phone Search Hit Rate | 70% |
| Estimated Addresses Per Hit | 3 |
| Total Addresses Identified | 52,500 |
| Mail Notice Population | 52,500 |
| Percentage of Undeliverable mail | 10% |
| Toll-Free Phone with IVR | Yes |
| Contact Center Agent Support | No |
| Informational Website | Yes |
| Mailed Notice Claim Response Percentage | 7% |
| Claims From Media Notice | 3,200 |
| Estimated Claims Received | 6,875 |
| Digital Payment Percentage | 20% |
| Case Duration (Months) | 9 |
| Mailing Packet Content | Single Postcard |

## Summary Estimate

| | | |
|---|---|---|
| Data Standardization and Reverse Look Up | $ | 5,000 |
| Class Notice | $ | 226,273 |
| CAFA Notice | $ | 2,515 |
| Project Management and Reporting | $ | 23,550 |
| Website | $ | 11,175 |
| Toll-Free Contact Center | $ | 4,288 |
| Claims Processing and Claimant Support | $ | 8,548 |
| Distribution and Fund Management | $ | 5,364 |
| Postage and Expenses | $ | 23,680 |
| Total Estimate | $ | 310,392 |